EDMUND BOYNTON & *al. versus* SAMUEL VEAZIE & *al.*

The law relating to the delivery of personal property does not require parties to a sale to perform acts extremely inconvenient, if not impossible; but it accommodates itself to their business and to the nature of the property.

Thus, when all the logs and boards designated by a particular mark are sold while floating upon the waters, a constructive or symbolical delivery only is required. And this may be done by the performance of any act which shows, that the seller has parted with the right and claim to control the property, and that the purchaser has acquired that right.

In such case, the delivery of one raft of boards, upon the water, having the same mark as of the logs upon it, for the whole lumber thus marked, would afford sufficient evidence of such a delivery. And the same raft may be used to make such a delivery of the whole lumber having the same mark, although it had before been used to make a delivery of a portion thereof between the same parties.

The possession of the logs and boards for a particular purpose, after the sale, such as to run them to a place named, there to be taken by the purchaser, and to be by him sold, and the proceeds credited to the seller, is not that description of possession by the seller, which will prevent the purchaser, during the time, from maintaining an action of trover therefor.

THE substance of what was contained in the bill of exceptions will be found in the opinion of the Court.

*Kent* and *A. G. Jewett*, for the defendants.

On their point, that nothing passed by the parol sale of the logs, there being, as they alleged, no delivery, they cited 1 C. & P. 372. That if there was a delivery, still this action of trover could not be maintained, because Grant, one of the defendants, had the logs in his possession, to be by him manufactured into boards, and to be delivered to the plaintiffs at Bangor. 2 East, 614; 2 Pick. 213; Long on Sales, 154; 3 Greenl. 183; 13 Pick. 396; 3 Pick. 258; 9 Pick. 156; 22 Pick. 535.

*McCrillis* and *Ingersoll,* for the plaintiffs.

In support of their position, that this was a sufficient delivery, situated as this property was, and must of necessity continue to be until manufactured, they cited *Jewett* v. *Warren,* 12 Mass. R. 300; *Austin* v. *Rice,* 17 Mass. R. 197; *Shurtleff* v. *Willard,* 19 Pick. 202.

A sale by parol is sufficient. *Damon* v. *Osborn,* 1 Pick. 476; *Parks* v. *Hall,* 2 Pick. 206.

The opinion of the Court was by

SHEPLEY J. — The bill of exceptions does not fully and clearly set forth all the facts. It was admitted in argument, that Grant, one of the defendants, had cut a large number of mill logs, on two different tracts of land, which were all marked with the same mark; that he was called upon by Stephen Chase, to pay for the value of the trees standing on township numbered one, in the ninth range, on which part of the logs were cut; and that he induced the plaintiffs to pay to Chase the sum of $1268,50, therefor. To repay them he conveyed to them the logs named in the bill of sale bearing date on July 1, 1840. Robert Gibson was called to witness that conveyance and a delivery of the property; and he testifies, that he did so, and signed the memorandum, made on the bill of sale, stating, that a raft of boards in the dock at Bangor, having on it the same mark as the mark of the logs, was delivered as the lumber described in the bill of sale. He further states, that after this business had been completed, Boynton observed to Grant, that in addition to that sum, he had advanced to him various sums, in supplies, &c. and expected to advance more, probably, than all his lumber would amount to, and that Grant was to deliver to him all the lumber in boards and logs of that mark. Most of the lumber was stated to be at Oldtown, below the boom, the raft of boards before noticed only being then in the dock. Gibson testifies, that " Grant said he delivered this lumber and all he had on the river to pay him, for what he paid at that time, and for what he had paid before." And that " Grant delivered the raft for all in the river of that

Boynton *v.* Veazie.

mark." The jury were instructed "that if they believed the witness, a sufficient sale in trust and delivery was proved." It is contended, that there was no legal delivery of those logs, which were not included in the bill of sale. That the raft of boards, which had been used to make a delivery of those logs included in the bill of sale, could not properly be again used to make delivery of those not included in it. And that a delivery of part for the whole would not be good, unless most of the logs were together, and so near at the time as to be under the control of the person, who was to make the delivery.

The law relating to a delivery of property, does not require parties to a sale, to perform acts extremely inconvenient, if not impossible. It accommodates itself to their business and to the nature of the property. When all the logs designated by a particular mark are sold while floating upon the waters, those acquainted with the business must be aware, that it may not be possible to obtain possession of any great number of them at one time and place, until they have been mostly stopped and rafted. And then any delivery, which could be made, would ordinarily leave them still floating upon the same waters. They might indeed, in this condition, be floated from one place to another, and be enclosed in a private enclosure of the purchaser. But it is not probable, that he could in that manner obtain possession of very nearly the whole number of logs designated by the mark. Usually, however, logs floating in the waters are not expected to be in the actual, but only in the constructive possession of the owner. And he cannot be expected to do more than to make, what is denominated a symbolical delivery. This may be done by the performance of any act, which shows, that the seller has parted with the right and claim to control the property, and that the purchaser has acquired that right. *Ludwig* v. *Fuller*, 5 Shep. 166, and cases there cited. The delivery of the raft of boards having the mark of the logs upon it, for the whole lumber thus marked, would afford sufficient evidence of such a delivery. And it is not perceived, that it might not be appropriately used to make such a delivery, although it had been before used to make a

delivery of a portion of the logs having the same mark. It is further contended, that the sale and delivery were not completed, so as to enable the plaintiffs to maintain an action of trover, because Grant was to saw the logs and run the boards to their agent at Bangor, who was to ship them to Boston, where they were to be received and sold by them, and the net proceeds were to be credited to Grant. But this arrangement was not inconsistent with the right of the plaintiffs to the property and to the possession of it. A refusal by either party to conform to it, could not have affected those rights. The possession of the logs and boards by Grant was only for a special purpose, and in submission to the rights of the plaintiffs. He was, in effect, only employed by them to do those acts as their agent, to be paid therefor by being credited, not with the price of the logs sold, but with the net proceeds of the boards sawed out of them. These were not acts to be performed before the title either to the property or to the possession should fully pass to them, but after it had passed. And he would act unlawfully by making use of the logs or boards for any other purpose.

*Exceptions overruled.*